| t SAMS, J., Pro Tempore.
The employer and its compensation carrier, Silver Oak Casualty Inc., appeal a judgment ordering them to pay surgical costs for the amputation of claimant Laine Thomas’s left arm, which was nearly severed in á logging' accident. The physician who performed the surgery, Dr. John T. Knight, answers the appeal, seeking penalties and attorney fees. For the reasons expressed, we affirm in part, reverse in part and render.
Thomas was employed by Roy D. Lowery Logging Inc. on June 5, 1997[1] when his left forearm was crushed between a falling log and the skidder he was loading. He was taken to Lincoln General Hospital *626 but, because his arm was nearly detached, he was airlifted to Schumpert Medical Center in Shreveport. Dr. Knight performed surgery to reattach the arm. Thomas progressed fairly well, and in mid-August Dr. Knight performed a bone graft. Complications developed; cultures detected staph and enterococcus bacteria in the wound. Dr. Knight had to débride the site on August 27, and noticed bloody discharge, advanced infection and necrosis around the wound. On Thursday, August 28, he advised Thomas that he would either have to undergo complicated micro-vascular reconstructive surgery to attempt to save the arm, or amputate. Because of Thomas’s poor general health and other factors,[2] Dr. Knight amputated the arm below the elbow on Friday, August 29.
The compensation carrier’s medical management service, American Lifecare, had certified on August 28 that the outpatient procedure scheduled for August 29 was medically necessary. However, late on the afternoon of August 28, |?the carrier’s regional claims supervisor, Ms. Radial, phoned Dr. Knight’s office to talk about the procedure. Their accounts of the conversation differ. According to Ms. Rachal’s affidavit, Dr. Knight said Thomas’s condition was not life-threatening, but could become so; microvaseular surgery was an option, but Thomas had elected to have the amputation. She asked him not to operate until the carrier obtained a second medical opinion from a local orthopedist, Dr. Milstead, but Dr. Knight amputated anyway. Dr. Knight testified by deposition, admitting that his August 27 report did not list infection as his “impression.” However, he resolutely denied telling Ms. Radial that Thomas elected amputation. On the contrary, he told her that because of the patient’s increasing drainage, he ran the risk of more extensive infection, possibly leading to an above-the-elbow amputation, a much more serious result. He considered this a risk of “serious permanent impairment,” despite the Workers’ Compensation Act’s precise definition of medical necessity. He also testified that Ms. Rachal did not grasp the urgency of Thomas’s condition, as she treated this request no differently from an elective carpal tunnel release. He added that post-operative pathology reports, obtained on September 10, showed Thomas had a Nafcillin-resistant strain of staph aureus, which would have severely diminished the prospects of a successful reconstructive surgery.
The carrier paid Thomas’s weekly indemnity benefits and all medicals except those related to the amputation. Thomas filed the instant disputed claim on April 3, 1998, seeking a recalculation of his indemnity rate and the unpaid medicals. In October 1998, the carrier and Thomas entered a settlement. In addition to the $18,628.80 already paid in indemnity and $76,889.39 in medicals, Silver Oak paid Thomas a lump sum of $90,000. The parties’ joint motion reserved the issue of the surgical and hospital bills related to the amputation, and stated that Thomas demanded penalties and attorney fees for the failure to pay 13these medicals. The WCJ approved the settlement and, in April 1999, Dr. Knight was substituted as party plaintiff to obtain his unpaid medicals.
The parties submitted the matter on joint stipulations and exhibits in June 1999. The WCJ ruled orally that American Life-care had approved the surgery on August 28, 1997, so she did not understand why the carrier failed to pay. Citing Dr. Knight’s deposition, she found the amputation was an emergency, and reasonable and necessary under the statute. She commented that the defendant’s conduct was “some of the worst arbitrary and capricious conduct I’ve seen since I’ve been on the bench,” but because the plaintiff had not requested them, she could not *627 award penalties and attorney fees. Judgment was rendered awarding Dr. Knight his surgical fees only.
As noted, Silver Oak urges the WCJ was plainly wrong to find amputation was an emergency and reasonable and necessary treatment under the Act. In brief it argues that Dr. Knight failed to prove that amputation of Thomas’s arm was a medical emergency, so under R.S. 23:1142 C and D his recovery for performing a nonemergen-cy procedure is limited to $750.00. It also argues, without elaboration, that Thomas’s condition did not qualify as an emergency under the utilization review rules, La. Adm. C. 40:12711. Silver Oak concedes that the jurisprudence is “devoid of any cases which provide guidance to workers’ compensation insurers and employees as it relates to the specific issue addressed in this appeal.”
Factually, Silver Oak argues that Dr. Knight’s records, specifically his August 27 office report, do not indicate that infection was a serious problem, thus contradicting his testimony. It also cites Ms. Rachal’s recollection that Dr. Knight said Thomas “elected” the amputation. It relies heavily on the testimony of the registered nurse, Daniel Green, who was Dr. Knight’s surgical assistant at the time. Green testified that he did not “recall redness traveling or a red streak going up [Thomas’s] arm,” and that on August 28 the wound was “no worse” than on RAugust 19. Green, who had worked closely with Thomas for over two months, disagreed with Dr. Knight’s decision to amputate. Finally, Silver Oak contends there was no independent medical expert evidence to corroborate Dr. Knight’s opinion.
The factual findings of a WCJ are subject to the manifest error or clearly wrong standard of review. Reeves v. Structural Preservation Syst., 98-1795 (La.3/12/99), 731 So.2d 208. Under this standard, the appellate court may set aside a factual finding only if the record demonstrates that it lacked a factual basis. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207. In the event of conflicting evidence, the WCJ’s decision to credit one witness’s account over another’s can virtually .never be plainly wrong. Hoy v. Gilbert, supra; Bruno v. Harbert Int’l Inc., 593 So.2d 357, 361 (La.1992).
The WCJ faced a factual dispute whether Dr. Knight told Ms. Rachal that amputation was elective. Ms. Rachal asserted this through affidavit, but Dr. Knight denied it. He cogently explained that Thomas’s infection was growing worse and that any delay to obtain a second opinion could result in a bigger (above-the-elbow) amputation, resulting in a great permanent disability. Although Dr. Knight’s surgical assistant did not agree that the infection was spreading, he admitted that he would defer to the doctor’s conclusions, and this strikes us as reasonable. Furthermore, we have closely reviewed Dr. Knight’s office records. Although they do not loudly proclaim that infection poses an imminent danger to Thomas’s life or his elbow, they are not inconsistent with the opinions stated in deposition and do not undermine them. In short, we detect no manifest error in the WCJ’s decision that the amputation was an emergency and thus covered in its entirety under R.S. 23:1142.
Moreover, we note that Thomas’s Condition met the criteria for emergency care under the utilization review rules, La. Adm. C. 40:12715 B. Specifically, Dr. | sKnight met the severity criterion by showing Thomas suffered an acute loss of ability to move a bodily part, his left hand, and wound dehiscence or evisceration, which was corroborated by the nurse. See, § 2715 B(2)(a)(l)(e) and (k). The surgeon obviously does not have to show that a condition is life-threatening to prove that medical care is an emergency. Dr. Knight also met the intensity of service criterion by showing that surgery or medical procedure was scheduled within 24 hours requiring general or regional anesthesia or the use of equipment, facilities or procedure *628 available only in a hospital. See, § 2715 B(2)(a)(2)(b). On this record, the WCJ’s finding of an emergency is not plainly wrong. The same facts will obviously support the finding that amputation was reasonable and necessary under‘R.S. 23:1203. This portion of the judgment is affirmed.
By answer to appeal, Dr. Knight urges the WCJ erred in failing to award penalties and attorney fees for the carrier’s failure timely to pay his surgical fees. The WCJ explicitly found that Silver Oak’s conduct was arbitrary and capricious under La. R.S. 23:1201 F. Silver Oak does not contest this finding, and we do not find it plainly wrong, in view of the pathology report of September 10, showing antibiotic-resistant bacteria that would have diminished the prospects of a successful microvascular reconstruction, and of American Lifecare’s subsequent letter to Ms. Rachal, stating that amputation may have been medically necessary.[3] Rather, the WCJ referred to Thomas’s initial contested claim, filed in April 1998, which did not include a prayer for penalties and attorney fees. This, however, is in error. In the parties’ joint motion to approve the settlement, filed October 15, 1998, Thomas reserved, and the carrier acknowledged, a claim for penalties and attorney fees for failure to pay medicals related to the amputation. This portion of | fithe judgment must be reversed. The statute provides that in the event a health care provider prevails on a claim for payment of his fee, penalties and attorney fees may be awarded and paid directly to the health care provider. R.S. 23:1201 F(4). On this record, the statutory penalty of $2,000 is warranted. Harrison v. Frank & Janie Seafood Rest, 30,845 (La.App. 2 Cir. 8/19/98), 718 So.2d 1003. .
 Dr. Knight requests a reasonable attorney fee based on the actual number of hours worked, but provides no record evidence of the value of the services. This court is authorized to render any judgment that is just, legal and proper upon the record. La. C.C.P. art. 2164. In the absence of documentation of the attorney fees incurred by the claimant, the court will assess a reasonable award based on the degree of skill and work involved, the number of court appearances, depositions, office work and time spent in court. See, Nation v. D & J Tire Inc., 31,345 (La.App. 2 Cir.12/9/98), 722 So.2d 364, and authorities therein. Here, counsel filed a disputed claim, engaged in discovery and negotiated a settlement, but this was on behalf of Thomas, and for these services counsel received a stipulated attorney fee of $11,000 in the judgment. Before Dr. Knight was substituted as party plaintiff, counsel conducted two medical depositions and drafted a pretrial statement; after-wards, he deposed Dr. Knight’s assistant. The matter was submitted on joint exhibits; there was no trial. Under the circumstances, we find an award of $1,000 will be adequate for counsel’s representation of Dr. Knight. Cf., Nation v. D & J Tire Inc., supra; Harrison v. Frank & Janie Seafood Rest., supra.
The penalty and attorney fees shall be assessed either against the employer or against the compensation carrier, depending upon fault. R.S. 23:1201 F(l). There is no record evidence that the employer, Roy D. Lowery Logging Inc., was responsible for the failure to pay Dr. Knight. Rather, this was the decision of the carrier, Silver Oak Casualty, and its adjuster, Ms. Rachal. Penalties and attorney fees are therefore assessed against Silver Oak only.
*629 _JjFor the reasons expressed, the judgment is AFFIRMED insofar as it awards the plaintiff, Dr. John T. Knight, medical expenses related to the surgery of August 29, 1997, with legal interest from date of judicial demand.
The judgment is REVERSED insofar as it denied Dr. Knight’s request for penalties and attorney fees. It is ordered, adjudged and decreed that there be judgment herein in favor of Dr. Knight and against the compensation carrier, Silver Oak Casualty Inc., in the full sum of $2,000.00, representing statutory penalty, and $1,000.00, representing statutory attorney fees, with legal interest from date of judicial demand.
All appellate costs are assessed to Silver Oak Casualty Inc.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. The Form 1008 states that the accident occurred on May 29 and was reported on May 27, 1997, but the Employer’s Report and medical records show that ■ it was actually June 5.

. According to Dr. Knight's surgical assistant, Daniel Green, Thomas had limited education and resources, and virtually no social support while staying in Shreveport; for these reasons, his rehabilitation had been difficult.

. In deposition. Dr. Knight was perplexed that the carrier would contest an amputation, which cost under $2,000, on grounds that he should have considered microvascular surgery, which could have cost as much as $100,000; the WCJ echoed his sentiments. Given the hardy infection and Thomas's proven difficulties with rehabilitation therapy, Dr. Knight felt that the alternative surgery would likely have yielded the same result, amputation.